Ronald JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–04–00032–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 18, 2005.

---

644

Karen Clark Harpold, Houston, TX, for appellant.

Carol M. Cameron, Houston, TX, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Ronald Johnson, was charged by indictment with possession of at least 400 grams of cocaine with intent to deliver. Appellant filed a motion to suppress the evidence which was subsequently overruled after a hearing. Appellant then entered a plea of guilty. The trial court found appellant guilty and assessed his punishment at confinement in the state penitentiary for a term of 25 years and a fine of $1,000.00. On his first appeal, appellant claimed the trial court erred in denying his motion to suppress. The State argued we had no jurisdiction to consider the appeal due to a defective notice of appeal. This court found jurisdiction based, in part, on the Texas Court of Criminal Appeals' decision in *Riley v. State*, 825 S.W.2d 699 (Tex.Crim.App. 1992). Having found jurisdiction, we reversed the trial court's judgment for error in denying appellant's motion to suppress.

*See Johnson v. State*, 47 S.W.3d 701 (Tex. App.-Houston [14th Dist.] 2001), *rev'd*, 84 S.W.3d 658 (Tex.Crim.App.2002). On the State's petition for discretionary review, the Texas Court of Criminal Appeals abrogated its previous holding in *Riley* upon which we had relied, reversed our judgment, and dismissed the appeal for want of a valid notice of appeal. *Johnson v. State*, 84 S.W.3d 658, 660 (Tex.Crim.App.2002).

Thereafter, appellant filed a post-conviction writ of habeas corpus alleging that ineffective assistance of counsel denied him a meaningful appeal. The court of criminal appeals granted relief and ordered that appellant be permitted to file an out-of-time notice of appeal. *Ex parte Johnson*, No. 74843, 2003 WL 22909099 (Tex.Crim. App. Dec.10, 2003). Accordingly, appellant presents a single point of error alleging that the trial court erred in denying his motion to suppress. We affirm.

The record reflects that sometime after 10:00 p.m. on March 26, 1998, Harris County Deputy Sheriff Shannon Bowdoin left his substation to assist Deputy I.G. Gordy in executing an unrelated arrest warrant. While en route, Bowdoin was "flagged down" by a citizen who stated that he had been chasing an armadillo between two nearby houses when he inadvertently observed a man processing what he knew to be crack cocaine. Bowdoin advised Gordy on the radio that he was going to "check out" the citizen's report, and Gordy agreed to assist Bowdoin in his investigation. The citizen told the deputies that while searching for the armadillo, he had peered through a wooden fence surrounding the back yard of a house. Due to the late hour, he could see inside the lighted house and noticed a gentleman standing in his kitchen processing cocaine.

Bowdoin and Gordy went to the house indicated by the citizen. They exited their patrol vehicles and walked toward the east

side of appellant's home. A large kitchen window and glass patio door were on the east side of appellant's home. As Bowdoin peered through the fence, he saw a triple beam scale in an upper cabinet on the west wall of appellant's kitchen. He knew from experience that triple beam scales are commonly used in the processing and sale of narcotics. Bowdoin also saw a box of baking soda near the scale which he knew was used in the creation and "cutting" of crack cocaine. At this time Bowdoin and Gordy decided they "would do what is commonly referred to as a knock and talk." Bowdoin described the procedure:

> Well, basically you knock on their front door, introduce yourself, state why you are there. You know, this is why we are here. Do you have a problem with us coming in and taking a look around? That's just a common practice.

Bowdoin testified that he hoped to get appellant's consent to search the premises.

South

North N

Figure 1: State's Exhibit 10

Gordy began to circle around the house to knock on the front door located on the southwest corner of the house. Bowdoin tried to position himself in a location where he could cut off any potential escape from the rear of the house. Bowdoin observed the back yard was accessible through an open gate on the north side of the house near appellant's garage. While that location did not permit Bowdoin to directly view the patio door on the rear of the house, it did allow him to see a large portion of the backyard, and it gave him ready access to the backyard should he need to apprehend a fleeing suspect. Unfortunately, the area around the gate was illuminated by a floodlight in the alley. As Bowdoin stood in the open gate, appellant unexpectedly opened the window treatments on a north-side window of the house. Almost face-to-face, Bowdoin observed that appellant looked startled. Ap-

pellant immediately retreated into the house.

Fearing for Gordy's safety, Bowdoin entered appellant's backyard. Bowdoin rounded the northeast corner of the house, moved along the east wall, and stopped at the corner of the patio. As he peered around the corner, Bowdoin noticed a machete laying on the patio. He then observed appellant enter the kitchen and walk to the sink. Bowdoin stepped onto the patio and walked up to a sliding glass door and window where he again came virtually face-to-face with appellant as appellant was reaching for a plastic bag filled with cookies of crack cocaine. Upon seeing Bowdoin, appellant attempted to cover the bag of cocaine with a muffin pan. Bowdoin drew his weapon and ordered appellant to the floor. Appellant complied. Appellant then crawled toward Bowdoin, as instructed, and unlocked the patio door. Bowdoin arrested appellant. Appellant subsequently gave Bowdoin and Gordy written consent to search the house, and cocaine was found and seized in various locations in the house.

■ Appellant contends, in his sole point of error, that the trial court erred in denying his motion to suppress. During oral argument, appellant claimed, for the first time on appeal, that we need not revisit the propriety of the search due to the "law of the case" doctrine. Because we previously held the police lacked probable cause, appellant contends we should reach the same holding here. "The 'law of the case' doctrine provides that once a question of law in a particular case has been finally resolved, that question will not be reconsidered in subsequent proceedings of the same case." *Ex parte Schuessler*, 846 S.W.2d 850, 852 n. 7 (Tex.Crim.App. 1993). Law of the case is a court-made doctrine designed to promote judicial consistency and efficiency by eliminating the

need for appellate courts to prepare opinions discussing previously resolved matters. *Howlett v. State*, 994 S.W.2d 663, 666 (Tex.Crim.App.1999). The doctrine's application is not inflexible, however. *See Ex parte Granger*, 850 S.W.2d 513, 523 (Tex.Crim.App.1993). An appellate court may reconsider its earlier disposition of a point of law if the court determines that there are "exceptional" circumstances that mitigate against relying on its prior decision. *Id.* Here, our previous opinion was a nullity because we lacked jurisdiction to consider the appeal. *See Johnson v. State*, 84 S.W.3d 658, 660–61 (Tex.Crim.App. 2002). As such, our previous opinion was void ab initio. *State v. Roberts*, 932 S.W.2d 700, 702 (Tex.App.-Tyler 1996, no pet.). Accordingly, we hold our previous judgment does not govern here, and we are not bound by the law of the case doctrine. *See Schuessler*, 846 S.W.2d at 852 n. 7.

■ For its part, the State claims we need not reach the merits because appellant waived any error by not objecting at trial on the same grounds now presented on appeal. The State asserts in its brief that appellant presented at trial a generic motion to suppress that merely objected to "all evidence seized in the instant case because of the illegal detention, search, and arrest of the defendant and his home." Thus, the State postulates that we cannot now consider appellant's contention that the arrest and search were not supported by probable cause.

■ A motion to suppress is a specialized objection to the admissibility of evidence. *Porath v. State*, 148 S.W.3d 402, 413 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Therefore, a motion to suppress must meet all of the requirements of an objection, that is, it must be timely and sufficiently specific to inform the trial court of the complaint. *Id.* Here, appel-

lant's motion to suppress states the search "was conducted ... without an arrest or search warrant." When a defendant seeks to suppress evidence, he bears the burden to rebut the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). This initial burden is met by proving the police conducted the search without a warrant. *Id.* Here, the State's attorney admitted the search had been conducted without the benefit of a warrant. Once the defendant establishes (1) that a search or seizure occurred and (2) that no warrant was obtained, the burden shifts to the State to prove the reasonableness of the search pursuant to one of the recognized exceptions to the warrant requirement. *Id.*

The State put on evidence that the search was reasonable (and thus fell within an exception to the warrant requirement) because it was supported by (1) probable cause and exigent circumstances and (2) written consent. Having made a prima facie showing that the search fell within at least two well-recognized exceptions to the warrant requirement, we find the burden then shifted back to the defendant to show the invalidity of these exceptions.[1] We do not mean to imply by this that appellant was *required* to present additional evidence to prevail on his motion to suppress—the trial court, as the trier-of-fact, could conclude, for example, the State's evidence was insufficient or not credible. However, if appellant had further com-

plaints or objections regarding the admissibility of the evidence, he was obliged to make them clear to the trial court. *Porath*, 148 S.W.3d at 413. In other words, appellant must have made the trial judge aware of his objection and given her the opportunity to address it. *Id.*

■ Appellant's written motion to suppress complained only that the search was conducted without the benefit of a warrant. The record fails to show that appellant made any further objection or complaint once the State offered evidence showing the search allegedly fell within several warrant exceptions.[2] However, a defendant may always challenge the sufficiency of the evidence for the first time on appeal. *Coggin v. State*, 123 S.W.3d 82, 89 (Tex. App.-Austin 2003, pet. ref'd). Here, appellant contends in his sole point of error that the search was not supported by probable cause. Moreover, it appears appellant's contention, both at trial and on appeal, is the same, *i.e.*, that the State's evidence, even if true, fails to show the existence of probable cause. Accordingly, we overrule the State's contention that the issue has not been preserved for our review.

■ In his brief, appellant contends he had a reasonable expectation of privacy in his backyard, and that Deputy Bowdoin unlawfully invaded the curtilage of his home without probable cause when he entered the backyard. "Probable cause" is a

---

1. See *Telshow v. State*, 964 S.W.2d 303, 307 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd); *Hogan v. State*, 954 S.W.2d 875, 876 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd); *Myles v. State*, 946 S.W.2d 630, 635 (Tex.App.-Houston [14th Dist.] 1997, no pet.). These cases stand for the proposition that once a defendant establishes a seizure occurred without a warrant, the burden of proof then shifts to the State to produce evidence of a warrant. But if evidence of a warrant is produced, the burden shifts back to the defendant to show the invalidity of warrant. We

think the same rule applies when the State, in lieu of a warrant, produces evidence of a warrant exception. In such case, the burden shifts back to the defendant to show the invalidity or inapplicability of the exception.

2. Counsel may well have made a more specific objection when arguing the merits of his motion. However, our record does not contain any arguments or discussions at the conclusion of the suppression hearing.

practical, nontechnical concept. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). It ripens at the moment facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a prudent man in believing the suspect has committed or is committing an offense. *Id.* Where police are approached by a "named" private citizen to report that he has witnessed a criminal act committed by another, "the credibility and reliability of the information is inherent." *Esco v. State,* 668 S.W.2d 358, 360–361 (Tex.Crim.App.1982); *Barton v. State,* 962 S.W.2d 132, 143 (Tex. App.-Beaumont 1997, pet. ref'd). Here, however, the citizen is not named. The record does not reflect whether his namelessness is due to the citizen's desire for anonymity or a simple oversight on the part of the police. In any event, we recognize there is a split of authority regarding the degree of credibility afforded to such unnamed citizens.

In *State v. Fudge,* 42 S.W.3d 226, 228 (Tex.App.-Austin 2001, no pet.), an unnamed taxi cab driver approached an Austin police officer and pointed out a white pickup truck that he claimed was "all over the road." The officer immediately stopped the truck and asked the driver to step out. The driver grabbed the side of the truck to maintain his balance, had bloodshot eyes, and had a strong odor of alcohol on his breath. After failing a field sobriety test, the driver was arrested for driving while intoxicated. The court of appeals held that by approaching the officer face-to-face, the cab driver put himself in a position where he could have been held accountable for his intervention. *Id.* at 232. Thus, the cab driver's credibility was such that the officer had reasonable suspicion to authorize a temporary detention. *Id.*

In *Bilyeu v. State,* 136 S.W.3d 691, 694 (Tex.App.-Texarkana 2004, no pet.), two police officers were taking a break in the parking lot of a convenience store at approximately 2:00 a.m. when they were approached by an unidentified citizen who reported that he had seen a woman asleep at the wheel of a gold Mercedes–Benz automobile while stopped at a nearby intersection while the traffic light was green. The citizen then identified the vehicle as it slowly passed by the officers' location at ten miles per hour in a thirty-five-mile-per-hour zone. The officers stopped the vehicle and determined the driver was intoxicated. The court of appeals chose not to follow *Fudge;* rather the court held the information provided by the unnamed citizen was akin to information from an anonymous tip. *Id.* at 695 n. 3.

 The reasonableness of a police officer's actions under the Fourth Amendment is not capable of precise definition or mechanical application. *Rhodes v. State,* 913 S.W.2d 242, 249 (Tex.App.-Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex.Crim. App.1997). Accordingly, we should not casually second-guess the officers' conduct from the relative tranquility of our chambers. *Id.* Rather, reasonableness must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* Allowance must be made for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* Thus, we recognize that situations may arise where a serious offense reportedly has occurred, is occurring, or is about to occur such that it would be foolhardy for the police to suspend their investigation until they had first determined the identity of the citizen-informant. The exigencies in such a case render the police officer's immediate investigation reasonable. In such

a scenario, we agree with the holding in *Fudge,* namely, that an unnamed citizen's unsolicited, face-to-face report of criminal conduct is inherently more reliable than an anonymous tip because the citizen could have been held accountable for his intervention.

■ While standing outside the curtilage, the police corroborated the citizen's report of narcotics activity by observing a triple beam scale near a box of baking soda in appellant's kitchen. While baking soda is a common in most kitchens, triple beam scales are not. The chance of randomly observing a box of baking soda in close proximity to a triple beam scale while passing behind a residence is extremely remote, and thus this observation greatly strengthened the credibility of the citizen's report that he recognized crack cocaine being manufactured in appellant's home.[3] Accordingly, we hold the police officers had probable cause to believe appellant was committing a criminal offense.

Appellant further contends that because the police had no probable cause to believe he was in possession of cocaine, they had no probable cause to believe he would destroy the contraband upon discovering the police outside his residence. Likewise, because the police had no probable cause to believe appellant was committing a criminal offense, he reasons that the police had no probable cause to believe he represented a physical threat to their safety. Ac-

cordingly, appellant contends that because there was no probable cause, there were no exigent circumstances justifying the warrantless arrest and search. In other words, appellant's argument regarding the lack of exigent circumstances is derived from and rests solely upon his contention the police did not possess probable cause to believe he was in possession of cocaine. However, we have already resolved that issue against appellant. Thus, we overrule appellant's contention.

Finally, appellant contends that because the police lacked probable cause, their invasion of the curtilage was improper. Because the invasion of the curtilage was improper, appellant contends his subsequent arrest was improper. Because his arrest was improper, he contends his written consent to search was tainted "fruit of the poisonous tree." Thus, his contention again rests entirely upon the alleged want of probable cause. Because we have already determined that the police did, in fact, possess probable cause to believe appellant was in possession of cocaine, his final contention also fails.

The judgment of the trial court is affirmed.

---

**3.** *See United States v. Buckley,* 4 F.3d 552, 555–56 (7th Cir.1993) (holding fact that informant had seen cocaine, a triple beam scale, and packaging materials was sufficient probable cause for a warrant); *United States v. Tate,* 795 F.2d 1487, 1489 (9th Cir.1986) (holding that after discovering narcotics in defendant's home, observation of a triple beam scale, containers, and a package containing rubber gloves inside his van was sufficient to justify a search warrant for the van); *Commonwealth v. Cramutola,* 450 Pa.Super. 345, 351, 676 A.2d 1214, 1217 (1996) (hold-

ing that report of concerned citizen and confidential informant that they had seen a triple beam scale and a plate with razor blades in defendant's kitchen and that defendant had refused to sell drugs to informant because she did not know him was sufficient to establish probable cause to believe defendant was trafficking in narcotics); *People v. Hill,* 169 Ill. App.3d 901, 910, 120 Ill.Dec. 574, 524 N.E.2d 604, 610 (1988) (holding that where police officer saw defendant in possession of white powder, a triple beam scale, and numerous packets, he had probable cause to make a warrantless arrest).