

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00120-CR

_____

DANIEL BARTOLO HERNANDEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 4
Tarrant County, Texas
Trial Court No. 1392181

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

After the trial court denied Daniel Bartolo Hernandez's motion to suppress, he entered a plea bargain, pleaded guilty to driving while intoxicated with a blood-alcohol content of 0.15 or more, and was fined $500 and sentenced to 90 days in the Tarrant County Jail, probated for 12 months. *See* Tex. Penal Code Ann. § 49.04(d). In two points, Hernandez argues that (1) the trial court erred by denying his motion to suppress and (2) the statute authorizing a $25 district-attorney fee is unconstitutional. We affirm.

## I. The Motion to Suppress

Arguing that his initial detention was not based on reasonable suspicion, Hernandez asserted that the police violated the United States Constitution, the Texas constitution, and article 38.23 of the Texas Code of Criminal Procedure and thus that the trial court should suppress all the evidence discovered after his unlawful detention.[1] U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23(a) ("No evidence obtained . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

---

[1]On appeal, Hernandez limits his argument to the United States Constitution.

## The Hearing and Trial-Court Ruling

At the suppression hearing, Officer Dane Ritcheson testified that on October 5, 2014, he and his partner, Corporal T. Brown, were dispatched to Blue Lot 11 at Cowboys' Stadium after the dispatcher had received multiple 911 calls regarding a large fight that possibly involved switch-blade knives. While they were en route, the dispatcher reported that people were bleeding; because the officers were now responding to an aggravated assault in progress, they activated their patrol car's lights and sirens.

The dispatcher's call sheet showed four separate 911 callers—one left her first name and telephone number; two left their first and last names and telephone numbers; and one called anonymously, but even so, the call sheet reflected a phone number. Other entries in the call sheet showed that the suspects were drunk and were wearing Cowboys and Texans jerseys. Officer Ritcheson heard the actual 911 calls for the first time at the suppression hearing.

As soon as Officer Ritcheson and Corporal Brown pulled into Blue Lot 11, stadium security guards, who Officer Ritcheson knew worked for Platinum Security, started pointing at a red Ford F-150 driving through the parking lot, and they were saying something to the effect that the suspect was in the truck. Not wanting to let a possible aggravated-assault suspect get away, Officer Ritcheson acknowledged not taking the time to talk to the security guards to gather more information. Because the officers believed that they were pulling over an aggravated-assault suspect, they

3

performed a "high-risk traffic stop," that is, they stepped out of their patrol car with pistols drawn.[2] Hernandez and his passenger got out of the Ford F-150.

But afterward, other officers who had arrived at the scene and who had spoken to the possible assault victims informed Officer Ritcheson that Hernandez was not the aggravated-assault suspect. And Corporal Brown, after speaking with some of the security guards, learned that they were pointing at Hernandez because they thought he was driving while intoxicated.

Because Hernandez stumbled out of his pickup, spoke with slurred speech, smelled of alcohol, and had trouble answering questions, Officer Ritcheson and Corporal Brown decided to investigate Hernandez for driving while intoxicated.

The trial court denied Hernandez's suppression motion.

### Hernandez's Contention

In his first point, Hernandez asserts that the trial court erred by denying his motion to suppress. He argues that the "anonymous tip in this case lacked suitable indicia of reliability that would allow for it to provide the officers with reasonable suspicion." He maintains that the tip "contained only the barest allegation of 'there he

---

[2]Hernandez argued at the suppression hearing only that the officers had unlawfully detained him. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997) ("[I]t cannot be said that whenever police draw weapons the resulting seizure must be deemed an arrest rather than a [detention] and thus may be upheld only if . . . probable cause was then present. The courts have rather consistently upheld such police conduct [as] a reasonable precaution for [officer] safety . . . ." (quoting 3 Wayne R. LaFave, *Search and Seizure*, § 9.2(d), 364 (2nd ed. 1987)).

4

goes'" and "provided no information pertaining to illegal activity, or even any activity at all." He further asserts that there "was no information by which to identify the informant or hold him or her accountable." According to Hernandez, reasonable suspicion requires that the tip reliably assert criminal conduct. *See Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 1379 (2000). And he contends that, here, the bare-bones tip only identified a suspect and lacked any facts linking that suspect to any criminal activity; in short, Hernandez argues that the officers had nothing, reasonable or otherwise, from which to suspect him of criminal conduct. *See id.*, 120 S. Ct. at 1379.

### Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we defer almost totally to the trial court's rulings on (1) questions of historical fact, even if the trial court determined those facts on a basis other than evaluating credibility and demeanor, and (2) application-of-law-to-fact questions that turn on evaluating credibility and

5

demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the witnesses' credibility and demeanor, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

A detention, as distinguished from an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Officers conduct lawful

6

temporary detentions when they reasonably suspect that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Id.*

An officer's reasonable mistake about the facts may yet legitimately justify the officer's conclusion that probable cause to arrest or reasonable suspicion to detain exists. *Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012). This is so because a mistake about the facts, if reasonable, will not retroactively invalidate an officer's actions so long as those actions were lawful under the facts as the officer reasonably, but mistakenly, perceived them to be. *Id.* at 720–21; *see Swadley v. State*, No. 02-15-00085-CR, 2016 WL 7241564, at *6 n.2 (Tex. App.—Fort Worth Dec. 15, 2016, pet. ref'd) (mem. op., not designated for publication); *Vernon v. State*, No. 11-13-00218-CR, 2014 WL 5151631, at *3 (Tex. App.—Eastland Sept. 25, 2014, pet. ref'd) (mem. op., not designated for publication).

The reasonableness of a police officer's actions under the Fourth Amendment defies precise definition or mechanical application. *Rhodes v. State*, 913 S.W.2d 242,

249 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997). Accordingly, we should not casually second-guess the officers' conduct from our chambers' reflective, deliberative, and relative tranquility or with hindsight's 20/20 vision. *Id.* Rather, we must judge reasonableness from the perspective of reasonable officers on the scene who are often forced to make split-second judgments in tense, uncertain, and rapidly evolving circumstances. *Id.* "Thus, we recognize that situations may arise when a serious offense reportedly has occurred, is occurring, or is about to occur such that it would be foolhardy for the police to suspend their investigation until they had first determined the identity of the citizen-informant." *Johnson v. State*, 171 S.W.3d 643, 649 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). In such a case, the exigencies may render an immediate detention reasonable. *Id.*

Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A 911 police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.*

**Discussion**

The scenario that Hernandez paints is of two officers pulling into a parking lot and seeing bystanders pointing at a pickup and asking the officers to stop it without explaining why. Those are not our facts, nor is that our scenario.

Here, in response to not one but four 911 calls, the officers were dispatched to a large fight that was upgraded en route to an in-progress aggravated assault with possible injuries. The number of calls reporting the same event lent credence to their validity, and although one of the four was anonymous, it could be traced to a phone number. Even if the officers did not know all the details, the dispatcher did. *See id.*

And when the officers arrived at the scene with lights and sirens on, they were immediately greeted by people they recognized as Cowboys' Stadium security personnel—and who the officers could reasonably assume would respond to any disturbance there—apparently indicating that Hernandez's departing car contained the suspect. Objectively, the presence of security personnel at the precise location to which the officers had been dispatched further corroborated the 911 calls. And under these circumstances, the officers could have reasonably concluded that security personnel had either witnessed or had determined that Hernandez was somehow involved in the disturbance they had been dispatched to and that he was leaving the scene.

As security personnel, these informants were not likely to drift off into anonymity but would presumably remain on the scene and thus remain accountable,

9

which was precisely what happened. *See id.* at 914–15; *Johnson*, 171 S.W.3d at 650. Corporal Brown spoke with them and learned that they had wanted Hernandez stopped because they were concerned that he was driving while intoxicated and not because he had been involved in an aggravated assault.

That the officers were mistaken about the reason the security personnel on the scene wanted Hernandez stopped does not render the officers' decision to detain Hernandez objectively unreasonable. *See Robinson*, 377 S.W.3d at 720–21. Given the choice between stopping to gather additional information from the security personnel or stopping the escaping person who the officers believed—wrongly but reasonably— had committed an aggravated assault, stopping the escaping suspect first was reasonable. *See Rhodes*, 913 S.W.2d at 249.

We overrule Hernandez's first point.

## II. Article 102.008(a)'s Constitutionality

In his second point, relying on a First District Court of Appeals' opinion, Hernandez complains that article 102.008(a) of the Texas Code of Criminal Procedure is facially unconstitutional because the statutory $25 district-attorney fee is not expended for criminal-justice purposes and is thus a tax in violation of the separation of powers. *See Hernandez v. State*, 562 S.W.3d 500, 509–11 (Tex. App.—Houston [1st Dist.] 2017, pet. filed).

We have previously addressed this issue, disagreed with the First Court's opinion, and overruled an attack on article 102.008(a)'s facial unconstitutionality. *See*

*Tyler v. State*, 563 S.W.3d 493, 500–03 (Tex. App.—Fort Worth 2018, no pet.).

Following our precedent, we overrule Hernandez's second point.

## Conclusion

Having overruled Hernandez's two points, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 15, 2019