**Affirmed and Opinion filed December 31, 2019.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

---

## NO. 14-18-00076-CR

---

## MICHAEL TREJO, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 22nd District Court
Hays County, Texas
Trial Court Cause No. CR-14-0769**

---

## OPINION

Appellant Michael Anthony Trejo, Jr., appeals his murder conviction, arguing in five issues that the trial court erred in (1) failing to suppress his video interview in violation of the Fifth and Sixth Amendments after he invoked his right to counsel; (2) overruling his hearsay objection to testimony regarding the sale of the firearm used in the commission of the offense; (3) allowing the State to use a prior consistent statement to bolster a witness's credibility; and (4) failing to grant a mistrial after the State purportedly misstated the law in closing argument during

the punishment phase of trial.[1] We affirm.

## *Background*

Christopher Vicuna lived with his cousin, Carlos Fernandez. Vicuna got into a fist fight with his neighbors, two brothers. Fernandez approached the men fighting and tried to pull the brothers off Vicuna a couple of times. After one of the brothers called their mother, Vicuna "took off." He went to his house, grabbed a gun, and ran back toward the brothers, who were getting into a car with their mother. Vicuna then shot in the direction of the car, ran away, and discarded the gun.[2]

Appellant was on the scene while police officers were investigating. After the officers left, at approximately 2:00 a.m., appellant walked over to Fernandez as he was standing outside. They discussed looking for Vicuna's gun so the neighborhood children would not find it, and they walked away together.

Fernandez's wife, Jessica, and mother, Rosa, were also standing outside at the time and "within a minute," they heard a gunshot. They ran toward the sound of the gunshot and saw appellant running away. He jumped into his car and fled. Two more men ran toward Jessica and Rosa—Jessica went with one of the men to look for Fernandez, and Rosa went with the other. Rosa found Fernandez lying on the ground. He had been shot and was pronounced dead on the scene.

Later that night, appellant was arrested in another county after fleeing the

---

[1] This case was transferred to our court from the Austin Court of Appeals; therefore, we must decide the case in accordance with the Austin Court's precedent if our decision would be otherwise inconsistent with that precedent. *See* Tex. R. App. P. 41.3.

[2] Vicuna at first testified that he fired the gun toward a field but admitted during cross-examination that he "was firing at somebody." Vicuna pleaded guilty to aggravated assault and was serving a sentence for that offense during trial. The gun that Vicuna discarded was never found.

scene of a car accident. He lost control of his vehicle, struck a guardrail, and fled on foot before being apprehended. A few days later, officers located a firearm near the scene of the accident. The State's firearms expert concluded the firearm found near the scene of the accident fired the bullet that was recovered from Fernandez's body. In addition, there was gunshot residue on some of appellant's clothing, which was consistent with "having been in the immediate proximity of a weapon that [was] being fired or [having] come into contact with a surface containing gunshot primer residue particles."

Vicuna testified at trial that Fernandez had had a handgun that matched the description of the murder weapon. Vicuna observed Fernandez display the gun to appellant. Appellant offered to purchase it for $100, but Fernandez declined to sell it to him at that time. At a later date, appellant pulled up outside Fernandez and Vicuna's house. Fernandez got the gun and took it outside. Vicuna left the house around that time. When Vicuna returned, Fernandez no longer had the gun but instead had about $350 in cash. Based on these observations, Vicuna testified that Fernandez sold the gun to appellant. Images of the same firearm were found on Fernandez's and appellant's phones and admitted at trial. Serial numbers on the images matched the serial numbers on the firearm used to kill Fernandez.

While appellant was in custody for fleeing the car accident, Detective Swonke, with another officer present, interviewed appellant regarding the murder. Appellant denied any involvement.

A few minutes into the video interview, appellant stated:

I might as well just get a lawyer. I don't even know what this is about. I feel like I might need a lawyer. Am I in trouble? Am I being charged with something? If I'm being charged with something, let me know, so I can just get my lawyer, because I've got a lawyer. I'll just call up my lawyer right now. If that's the case, then I'll just call him, call him

right now. Am I getting charged?

At first Swonke responded that appellant was not being charged but told him at the end of the interview that he probably would be charged with something due to his lack of cooperation.

## I.     Motion to Suppress

In his first and second issues, appellant challenges the trial court's denial of his motion to suppress portions of his video interview after he purportedly invoked his right to counsel. He contends that the video interview was admitted in violation of his Fifth Amendment and Sixth Amendment rights to counsel.

We review a trial court's ruling on a motion to suppress under a bifurcated standard, giving almost total deference to the trial court's findings of historical fact and reviewing de novo the trial court's application of the law. *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). When a criminal defendant challenges the admissibility of a videotaped statement, we defer to the trial court's determination of historical facts in the video. *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012). We use the same deferential standard for mixed questions of law and fact that require evaluation of credibility and demeanor. *Id*. However, we review de novo all other mixed questions of law and fact that do not fall within that category. *Id*. at 184.

When the trial court makes no finding of facts, we view video evidence in the light most favorable to the trial court's ruling to deny the motion to suppress. *Id*. We presume that the trial court made implicit findings that support the denial of Appellant's motion to suppress. *Id*. at 184-85. If video evidence does not support the trial court's conclusion, we must reverse. *Id*. But we must uphold the trial court's ruling if it falls within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

4

## A. Fifth Amendment

Appellant argues in his first issue that he invoked his right to counsel under the Fifth Amendment during the interview and that officers should have ceased the interview at that time. The State concedes that appellant was in custody during the interview but asserts that he did not unequivocally invoke his right to counsel.[3]

Swonke began his interview by giving appellant his *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The Fifth Amendment right to interrogation counsel is triggered by the *Miranda* warnings that police must give before beginning any custodial questioning. *Pecina v. State*, 361 S.W.3d 68, 71 (Tex. Crim. App. 2012). Under the Fifth Amendment, the police must advise a suspect whom they have arrested that he has the right to have counsel present during any police-initiated interrogation. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). Once the suspect has invoked his Fifth Amendment right to counsel, police interrogation must cease until counsel has been provided or the suspect himself reinitiates a dialogue. *Id*.

Not every mention of a lawyer will invoke the Fifth Amendment right to the presence of counsel during questioning. *Id*. An ambiguous or equivocal statement with respect to counsel does not even require officers to seek clarification, much less halt their interrogation. *Id*. Whether the mention of a lawyer constitutes a clear invocation of the right to counsel will depend upon the statement itself and the totality of the surrounding circumstances. *Id*. The test is objective: the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 892–93. We look to the totality of

---

[3] The State asserts that the trial court granted the motion to suppress all but three minutes of the interview. But approximately thirteen minutes of the interview was played at trial.

circumstances to determine whether any statement referencing counsel was really a clear invocation of the Fifth Amendment right; we do not look to the totality of the circumstances, however, to determine in retrospect whether the suspect really meant it when he unequivocally invoked his right to counsel. *Id*. at 893. Finally, when a suspect makes a clear, but limited, invocation of the right to counsel, the police must honor the limits that are thereby placed upon the interrogation, but they may question their suspect outside the presence of counsel to the extent that his clearly expressed limitations permit. *Id*.

The State argues that appellant's request for a lawyer was not unequivocal because it was conditioned upon whether appellant was being charged with a crime. In *Gobert*, the Court of Criminal appeals held that the statement "I don't want to give up any right though, if I don't got no lawyer" was an unequivocal invocation of the right to counsel. *Id*. at 892-93. In reaching this conclusion, the high court noted: "Just because a statement is conditional does not mean it is equivocal, ambiguous, or otherwise unclear." *Id*. at 893. In that case, the Court held officers were required to comply with the defendant's clearly stated condition—that he was not willing to give up his *Miranda* rights without an attorney present. *Id*. at 894.

This case is distinguishable from *Gobert* in that appellant had not yet been charged at the time of the interview, so the stated condition had not occurred. But Swonke admitted at trial that by the time of the interview, he already was certain that appellant committed the murder. At issue, then, is whether a reasonable police officer would have understood the statement to be a request for an attorney under these facts.

The State relies on several cases that involve equivocal statements such as "Do I need an attorney?" *United States v. Montes*, 602 F.3d 381, 385 (5th Cir.

2010), and "I should have an attorney," *Davis v. State*, 313 S.W.3d 317, 341 (Tex. Crim. App. 2010). Here, appellant stated that he already had a lawyer and he would call him if he was being charged with a crime: "If I'm being charged with something, let me know, so I can just get my lawyer, because I've got a lawyer. I'll just call up my lawyer right now. If that's the case, then I'll just call him, call him right now." The case cited by the State that is most factually similar to this case is *Molina v. State*, 450 S.W.3d 540 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In *Molina*, the defendant stated, "If I'm getting blamed for something like that . . . I'm going to just go ahead and call my lawyer." *Id.* at 547. Citing *Gobert*, the defendant argued that because the officers "well knew" that he was being blamed for murder, no reasonable police officer could interpret the statement other than as a clear invocation of the right to counsel. *Id.* This court held that the facts in *Molina* were distinguishable from those in *Gobert* because the defendant in *Molina* "agreed to answer questions, conditionally referred to calling his lawyer, and then continued to request additional information about the case and answer the investigators' questions." *Id.* The court concluded the defendant's statement "was not in the form of a request, nor did appellant expressly say that he wanted a lawyer." *Id.*

This case is also distinguishable from *Molina*. Appellant said he wanted a lawyer if he was being charged with a crime, steadfastly denied any involvement in the offense, refused to answer Swonke's questions, and did not request information about the case. Moreover, appellant's statement "[i]f I'm being charged with something, let me know, so I can just get my lawyer, because I've got a lawyer" was not equivocal. *Cf. Davis*, 313 S.W.3d at 341 ("That appellant's statement, 'I should have an attorney,' was not a request for an attorney is also bolstered by the fact that he subsequently asked the detectives why he should help them out."). The

7

statement was conditioned on appellant's being charged with a crime. As the court noted in *Gobert*, a conditional statement is not necessarily "equivocal, ambiguous, or otherwise unclear." 275 S.W.3d at 893.

Presuming that the trial court admitted appellant's statement in violation of his Fifth Amendment right to counsel, we conclude appellant was not harmed by the statement's admission. *See McCarthy v. State*, 65 S.W.3d 47, 52 (Tex. Crim. App. 2001); *see also Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (discussing harm analysis applied to *Miranda* exclusionary rule). Because any error would be of constitutional magnitude, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *McCarthy*, 65 S.W.3d at 52 (citing Tex. R. App. P. 44.2(a)). If there is a reasonable likelihood that the error materially affected the jury's deliberations, the error was not harmless. *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). We must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Id*. In determining whether constitutional error in the admission of evidence is harmless, we consider the entire record in light of several factors, including the importance of the evidence to the State's case; whether the evidence was cumulative of other evidence; the presence or absence of other evidence corroborating or contradicting the evidence on material points; the overall strength of the State's case; and any other factor, as revealed by the record, that may shed light on the probable impact of the error on the mind of the average juror. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

Appellant did not confess. The essence of his statement was to deny any involvement in the offense and ask if he needed an attorney. Swonke told appellant officers knew he was with Fernandez on the night of the offense. Appellant denied

being there and denied knowing who Fernandez was. Appellant then made the above statements about possibly needing a lawyer and said, "I don't even know what this is about." He asked a few times if he was being charged with anything and opined that he was only in jail because he ran from the car accident. The overall effect of appellant's demeanor was defensive, but he did not make any inculpatory statements about the murder or even being present before, during, or after the offense occurred.

Compelling evidence supported the jury's finding of guilt. Perhaps the most persuasive evidence was the recovery of the murder weapon near the scene of appellant's car accident. The State's firearms expert testified that the recovered weapon fired the bullet that killed Fernandez. Moreover, Vicuna testified that Fernandez had had a gun matching the description of the murder weapon and sold it to appellant. Images of a firearm on Fernandez's and appellant's phones had serial numbers that matched the serial numbers on the murder weapon. Some of appellant's clothing had gunshot residue on it, which was consistent with having been near a weapon that had been fired or having touched a surface containing gunshot residue.

Moreover, despite appellant's denials, numerous witnesses testified that appellant was present while officers were investigating the earlier incident with Vicuna. After the officers left, Fernandez's mother and wife both observed Fernandez and appellant walk away together. Shortly thereafter, a shot was fired, killing Fernandez. Appellant ran away and fled in his car.

In light of this evidence, the above factors weigh in favor of our conclusion that the trial court's error, if any, in admitting the statement was harmless: appellant's interview was not very important to the State's case, given that appellant did not make any statements incriminating himself in the murder; ample

9

evidence contradicted appellant's denials regarding his presence on the scene and his acquaintance with Fernandez; and the State's case was strong because direct evidence linked appellant to the murder weapon and appellant was with Fernandez when or immediately before he died. Based on these factors, we conclude beyond a reasonable doubt that any error in admitting appellant's statement did not contribute to the jury's guilty verdict. We overrule appellant's first issue.

### B. Sixth Amendment

Appellant argues in his second issue that the trial court should have suppressed his statement because it was taken in violation of his Sixth Amendment right to counsel. The Sixth Amendment right to counsel attaches "at or after the time that adversary judicial proceedings have been initiated." *Griffith v. State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001).

While no "magic words" or citation to specific rules is required to preserve a complaint for appeal, a party must convey the substance of the complaint to the trial court clearly enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error. *Ex parte Marascio*, 471 S.W.3d 832, 842 (Tex. Crim. App. 2015). The record must make it clear that both the trial court and the opposing party understood the legal basis for the complaint. *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013). Further, the complaint on appeal must comport with the specific objection made at trial, or error has not been preserved. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). A motion to suppress, as a specialized objection to the admissibility of evidence, must meet all the requirements of an objection, including that it be both timely and sufficiently specific to inform the trial court of the complaint. *Johnson v. State*, 171 S.W.3d 643, 647 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see* Tex. R. App. P. 33.1(a).

In the written motion to suppress, appellant asserted his statement was obtained in violation of the "Fourth, Fifth, and Fourteenth Amendments to the United States Constitution." He also cited *Miranda* and *Gobert*, which involve only the Fifth Amendment right to counsel. At the hearing on the motion, the trial court asked, "this is strictly a *Miranda* issue?" Trial counsel responded, "Judge, it is. It relates to his invocation of counsel." No mention was made in the motion or at the hearing of appellant's Sixth Amendment right to counsel.

An accused's Fifth Amendment right to consult with counsel before speaking is distinct from an accused's Sixth Amendment right to representation by counsel. *Janecka v. State*, 937 S.W.2d 456, 465 (Tex. Crim. App. 1996); *Looney v. State*, 745 S.W.2d 927, 933 (Tex. App.—Houston [14th Dist.] 1988, no pet.). Based on this record, we conclude that appellant did not preserve for our review his complaint concerning a violation of his Sixth Amendment right to counsel. *See Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016); *see also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). We overrule appellant's second issue.

## II.    Hearsay Challenge

In his third issue, appellant argues that the trial court abused its discretion in denying his hearsay objection to Vicuna's testimony involving Fernandez's sale of the firearm to appellant. Appellant's counsel took Vicuna on voir dire and afterward objected to his testimony on the following basis: "[O]ur concern is that we believe that what [Fernandez] told [Vicuna] about the gun—and it doesn't have to be an actual verbal expression. But whatever [Fernandez] showed [Vicuna] that would take the place of a verbal expression is hearsay." The State conceded that Fernandez's oral statements to Vicuna would be hearsay but not "everything else that shows [Vicuna's] personal knowledge of the transaction." The trial court

11

overruled the objection as to Vicuna's personal observations and instructed Vicuna, "[Y]ou're going to be able to testify as to what you actually observed, not what [Fernandez] told you."

Appellant challenged the following testimony elicited by the State as hearsay:

Q. Did you ever see and hear [appellant] negotiating with [Fernandez] for the sale or the purchase of that firearm?

A. Yes. We were in his car whenever we talked about it, you know— or whenever [appellant] and [Fernandez] talked, you know, trying to see . . . if he wanted to sell the gun.

Q. And did . . . did [Fernandez] display that firearm to [appellant]?

A. Yeah, he . . . handed it to him. [Appellant] was looking at it. And [appellant] was trying to buy it at the time. You know, he offered [Fernandez] $100, and, you know, he didn't want to sell it for that amount.

Q. Okay. And I want to talk about just what you saw like we just discussed. Did you ever see text messages on [Fernandez's] phone between [Fernandez] and [appellant] discussing the sale of the firearm?

A. Yes.

Q. Okay. Were you at the residence when [appellant] showed up one day?

A. Yes.

Q. Okay. Did . . . you watch [Fernandez] go and get the firearm?

A. Yes. . . .

Q. [D]id [Fernandez] take the gun outside?

A. Yes. He . . . got a text message from him or whatever, and he said he was going to go sell the gun.

Q. [L]et's just say what [you] saw. . . .

A. He stood up, grabbed the gun, and walked out.

Q. Now, what did you do?

A. I went to my mom's house for little bit to go grab some clothes.

Q. When you came back, did [Fernandez] still have the firearm?

A. No. He had the money . . . .

Q. Were you able . . . to see the money?

A. Yes.

Q. Okay. Do you recall how much money [Fernandez] had?

A. Yes. It was . . . around 350.

Q. Okay. And did you ever see the firearm after that?

A. No, because [Fernandez] had sold it to [appellant].

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). Hearsay statements are not admissible at trial unless they fit into an exception designated by statute, the rules of evidence, or another rule prescribed under statutory authority. Tex. R. Evid. 802; *Pickron v. State*, 515 S.W.3d 462, 465 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). We review a hearsay challenge to the trial court's admission of evidence for an abuse of discretion. *Saldinger v. State*, 474 S.W.3d 1, 6 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id*. at 6-7.

The State does not contend that any hearsay exception applies to

Fernandez's oral statements to Vicuna. However, appellant's statements offering to purchase the firearm were not hearsay. *See* Tex. R. Evid. 801(e)(2)(A) (statement of a party opponent is not hearsay). Appellant also contends that "non-verbal actions can and do qualify as hearsay when they are 'assertions by conduct.'" According to appellant, Vicuna's testimony that he saw Fernandez leave with the murder weapon and return with money "was clearly the result of non-verbal conduct by the decedent." We disagree. Vicuna testified that he personally observed these actions. This testimony was not based on any statements by Fernandez, verbal or nonverbal.

Appellant relies on *Graham v. State*, 643 S.W.2d 920 (Tex. Crim. App. 1981), to support his argument that nonverbal communication can be hearsay. In that case, the witness showed several photographs to the victim after asking her to identify the person who had shot and robbed her. *Id.* at 927. The victim made a shooting motion with her hand when she saw the defendant's photograph. *Id.* The Court of Criminal Appeals held the shooting motion was a hearsay statement because it was "only significant as indicating [the victim's] belief that [the defendant] was the individual who shot her." *Id.*

Here, Vicuna did not testify that Fernandez communicated to him nonverbally. Vicuna testified as to his personal observations of what happened and his reasonable inferences from those observations, which is not hearsay. *See, e.g., Wilson v. State*, 605 S.W.2d 284, 286 (Tex. Crim. App. [Panel Op.] 1980) (holding officer's personal observation of driver's license and inference that it belonged to the defendant was not hearsay and stating, "[a] witness may assert the existence of a fact if his knowledge of that fact was gained through personal observation and reasonable inferences from that observation"); *Damian v. State*, 881 S.W.2d 102, 112 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding witness's testimony

14

was not based on indirect hearsay when he personally observed defendant leaving bedroom where victim was assaulted); *Brockway v. State*, 853 S.W.2d 174, 177 (Tex. App.—Corpus Christi 1993, pet. ref'd) (holding officer's testimony that he found a knife after talking to another officer was not based on "backdoor hearsay").

That leaves only Vicuna's testimony that he heard Fernandez negotiating with appellant for the sale of the weapon and that he saw text messages from Fernandez regarding those negotiations. Presuming this testimony was hearsay, we must determine whether its admission was harmless. *See Pickron*, 515 S.W.3d at 466.

The following properly admitted evidence was not hearsay: Fernandez had a handgun that matched the description of the murder weapon. Vicuna observed Fernandez display the gun to appellant. Appellant, a party opponent, offered to purchase it for $100. At a later date, Vicuna saw appellant outside Fernandez and Vicuna's house. Fernandez left the house with the gun and returned without it. He had cash when he returned. Vicuna testified based on his observations that Fernandez sold the gun to appellant. Images of the same firearm were found on Fernandez's and appellant's phones and admitted at trial. The serial numbers on the images matched the serial numbers on the firearm used to kill Fernandez.

We conclude any error in admitting Fernandez's statements was harmless because the statements were cumulative of properly admitted evidence. *See Pickron*, 515 S.W.3d at 466 (holding admission of complainant's statements, even if erroneously admitted as hearsay, would have been harmless because the testimony was cumulative of other evidence in the record). We overrule appellant's third issue.

### III.  Prior Consistent Statement

In his fourth issue, appellant contends the trial court abused its discretion by allowing the State to bolster Vicuna's credibility by admitting a prior consistent statement in a video interview. Vicuna testified at trial that he shot his gun in the direction of a field and not toward anyone, despite the fact that he had pleaded guilty to aggravated assault by threat of imminent bodily injury with a deadly weapon. Appellant's counsel impeached Vicuna's credibility at trial with (1) Vicuna's plea agreement to establish that he lied about not firing his gun toward someone and (2) a statement to police that he had not fired a gun but instead ignited a firecracker. The trial court admitted a video interview of Vicuna as a prior consistent statement discussing the sale of the firearm to appellant.[4]

We review a trial court's evidentiary ruling for abuse of discretion. *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007). As long as the trial court's ruling is within the zone of reasonable disagreement, we will not intercede. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).

Under Rule of Evidence 613(c), a witness's prior consistent statement is not admissible to bolster the witness's credibility, but it is admissible to rebut an express or implied charge of recent fabrication. Tex. R. Evid. 613(c), 801(e)(1)(B). Rule 801 gives substantive, non-hearsay status to prior consistent statements of a witness "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *Hammons*, 239 S.W.3d at 804. Prior consistent statements are admissible when four foundational requirements are

---

[4] In the video interview, Vicuna also discussed the circumstances surrounding the aggravated assault for which he later pleaded guilty. Appellant challenges only the admission of the portion of the video involving the sale of the firearm: according to appellant, the trial court "erroneously allow[ed] the State to admit and publish the entire video with Vicuna wholesale regarding the sale of the firearm used in the commission of the instant offense."

met: (1) the declarant must testify at trial and be subject to cross-examination; (2) the opposing party must have made an express or implied charge of recent fabrication or improper influence or motive regarding the declarant's testimony; (3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *Id*.

Element three is at issue: whether the prior consistent statement is consistent with the challenged in-court testimony. The challenged in-court testimony involved the sale of the firearm to appellant. But appellant's attorney impeached Vicuna with the statement that he lied about firing his gun at someone. Presuming the trial court abused its discretion in admitting the video interview because it was not consistent with the challenged in-court testimony, we cannot overturn the conviction unless, after examining the record as a whole, we conclude that an error may have had a substantial influence on the outcome of the proceeding. *See Linney v. State*, 401 S.W.3d 764, 782 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In this case, any error was harmless because, as discussed above, even without Vicuna's testimony and interview regarding the sale of the firearm, ample evidence linked appellant to the murder weapon: witnesses observed appellant leave with Fernandez and flee right after Fernandez was shot, the murder weapon was recovered near the scene of appellant's car accident, the State presented testimony that the recovered weapon fired the bullet that killed Fernandez, and images of the firearm were found on both Fernandez's and appellant's phones, as established by the serial numbers.

After examining the record as a whole, we are reasonably assured that any error in admitting the prior consistent statement did not have more than a slight effect, if any, on the jury's verdict. *See id*. We overrule appellant's fourth issue.

## IV. Misstatement of Punishment Range

In his fifth issue, appellant contends that the trial court erred in failing to grant a mistrial during the punishment phase of trial because the State purportedly misstated the punishment range during closing argument by referring to heat of passion crimes as the type of offense that would merit the low end of punishment. The punishment range for the charged offense of murder is 5 to 99 years or life. Tex. Penal Code §§ 19.02(c), 12.32(a). The punishment range for sudden passion crimes is 2 to 20 years. *Id*. §§ 12.33(a), 19.02(d) (allowing defendant to raise issue during punishment phase regarding whether he caused someone's death "under the immediate influence of sudden passion arising from an adequate cause" and if proven, reducing sentence to second degree felony).

During closing argument, State's counsel stated: "And when we start at five, we think about heat of passion, anger, sparks, instant, bad decisions. [A] classic example is the guy that comes home and catches his wife in bed with another—a man." Appellant's counsel objected on the basis that "that is a different offense as far as the punishment range is concerned." The trial court sustained the objection and instructed the jury to disregard the statement.

Appellant contends that afterward, the State "persist[ed] with arguing that the lower range of punishment in the case [was] defined [as follows]":

> So there are examples that you can imagine on your own where two people might have a heat of passion or a lot of anger and sparks that are justified that might cause people to hate each other, to scream and yell at each other, and to be consumed by that color red and an instant decision that's gone wrong. And that can be murder.

> And at the other end of the spectrum, you can have a hypothetical where some act is cold. Some murder is so calculated, so detailed in the length of time that it was planned.

Defense counsel did not object at trial to this argument.

By failing to object to the State's continued argument regarding heat of passion crimes after the trial court sustained the first objection, appellant waived any error because the argument was substantially the same as the argument the State previously made. *See Taylor v. State*, 109 S.W.3d 443, 449 n.25 (Tex. Crim. App. 2003) ("Where the same evidence or argument is presented elsewhere during trial without objection, no reversible error exists."); *Temple v. State*, 342 S.W.3d 572, 610 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). We overrule appellant's fifth issue.

### *Conclusion*

We affirm the judgment of the trial court.

/s/  Frances Bourliot
    Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.

Publish — TEX. R. APP. P. 47.2(b).