Russell Lloyd, Justice *503 Appellant Nelson Alberto Hernandez was charged by information with assault-family member. After a jury found appellant guilty of the charged offense, the trial court assessed his punishment at 180 days in county jail. In three points of error, appellant contends that the trial court erred in (1) admitting the 911 call in violation of the Confrontation Clause; (2) labeling the offense for which appellant was convicted as "assault-family member" rather than "assault"; and (3) assessing a $25 "district attorney" fee in the bill of cost. We modify the trial court's judgment and affirm as modified.
Background
The information charged that appellant, "on or about JUNE 8, 2016, did then and there unlawfully[,] intentionally[,] and knowingly cause bodily injury to EBONY JONES, a MEMBER OF THE DEFENDANT'S FAMILY, A MEMBER OF THE DEFENDANT'S HOUSEHOLD, AND A PERSON WITH WHOM THE DEFENDANT HAD A DATING RELATIONSHIP, hereafter styled the Complainant by STRIKING THE COMPLAINANT WITH HIS HAND." Appellant pleaded not guilty.
At trial, the State called Deputy Bryan Maly with the Harris County Sheriff's Office as a witness. The complainant, Jones, did not testify at trial. The State also introduced six exhibits, among them, three photographs of Jones's injury and a tape recording of her 911 call.
Before testimony began, the State requested that the trial court rule on the admissibility of Jones's 911 call. After listening to the recording and to the arguments of counsel, the trial court stated:
And I am going to find that I hear in the voice a stressed voice of somebody that's trying to get some police help. It is not calm. I believe that it does rise to the level of an emergency situation, although I don't think there is any bright line rule of what is an emergency situation. It is based upon the circumstances and the facts of a particular case.
The trial court admitted the recording of the 911 call, and the tape was played for the jury. In the call, Jones requested police assistance and stated that appellant, her husband, had attacked her. Shortly after he was notified of the call, Deputy Maly arrived on the scene.
Upon his arrival, Deputy Maly observed that Jones had "rather pronounced swelling on the side of her face, just near the eye." Deputy Maly described Jones as "very shaken, unsteady" and "traumatized," and stated that she was out of breath, her voice was quivering, and she appeared to have been crying. When Deputy Maly asked Jones if she needed EMS, Jones responded "no."
After meeting with Jones, Deputy Maly and two other deputies went to appellant's location at his friend's apartment in the complex. Appellant told Deputy Maly that he and Jones had gotten into an argument because he wanted to take his daughter back to Honduras and that he had gone to his friend's apartment to get away from the argument. Appellant had his marriage license and daughter's birth certificate with him. When Deputy Maly asked appellant if he had hit Jones, he replied that he had hit her in the past but had not hit her "this time." Deputy Maly testified that appellant *504 displayed signs of intoxication, including red, bloodshot eyes, and that his breath smelled of alcohol. Deputy Maly subsequently detained appellant.
At the conclusion of trial, the jury found appellant guilty of the charged offense, and the trial court assessed his punishment at 180 days' confinement in county jail. This appeal followed.
Discussion
A. Admissibility of 911 Tape Recording
In his first point of error, appellant contends that the trial court erred in admitting Jones's out-of-court statements made in the 911 call because the statements were testimonial and their admission violated the Confrontation Clause.
1. Applicable Law
The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Crawford v. Washington , 541 U.S. 36, 42, 124 S.Ct. 1354, 1357, 158 L.Ed.2d 177 (2004) ; Langham v. State , 305 S.W.3d 568, 575 (Tex. Crim. App. 2010) (citing U.S. CONST. AMEND . VI ). Once a defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but is nevertheless admissible. See De la Paz v. State , 273 S.W.3d 671, 680-81 (Tex. Crim. App. 2008) (citing Crawford , 541 U.S. at 68, 124 S.Ct. at 1374 ).
2. Standard of Review
We review alleged violations of the Confrontation Clause, including whether a statement is testimonial or nontestimonial, de novo. See Wall v. State , 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). The admission of a testimonial statement in violation of the Confrontation Clause is subject to a constitutional harm analysis under Rule of Appellate Procedure 44.2(a). See TEX. R. APP. P . 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."); see Wall , 184 S.W.3d at 746 (noting that if there is reasonable likelihood that error materially affected jury's deliberations, then error is not harmless beyond reasonable doubt).
3. Analysis
To determine whether the admission of the 911 tape violated the Confrontation Clause, we must first determine whether the statements on the tape are testimonial. In Davis v. Washington , the United States Supreme Court explained the distinction between testimonial and nontestimonial statements:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
*505 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).
"Statements made to police during contact initiated by a witness at the beginning of an investigation are generally not considered testimonial." Cook v. State , 199 S.W.3d 495, 498 (Tex. App.-Houston [1st Dist.] 2006, no pet.) ; see also Garcia v. State , 212 S.W.3d 877, 883 (Tex. App.-Austin 2006, no pet.). For this reason, 911 calls initiated to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information enabling officers to end a threatening situation." Davis , 547 U.S. at 832, 126 S.Ct. at 2279 ; Cook , 199 S.W.3d at 498 ; see also Rodgers v. State , No. 09-09-00359-CR, 2010 WL 3043705, at *2 (Tex. App.-Beaumont Aug. 4, 2010, no pet.) (mem. op., not designated for publication) (listing cases in which courts concluded similar 911 calls were nontestimonial).
In Davis , the Court addressed whether statements made by a victim of domestic violence to a 911 operator[1] were testimonial in nature. See 547 U.S. at 826-27, 126 S.Ct. at 2276-77. In concluding that the caller's statements were nontestimonial and thus admissible, the Davis court considered the following factors: (1) the caller was describing events as they were actually happening rather than past events; (2) any reasonable listener would recognize that the caller was facing an ongoing emergency; (3) when viewed objectively, the nature of what was asked and answered was such that the elicited statements were necessary to resolve the present emergency, rather than simply to learn what had happened in the past; and (4) the caller was frantically answering the 911 emergency operator's questions over the phone, in an environment that was not tranquil, or even safe. See ids="3275498" index="20" url="https://cite.case.law/us/547/813/#p822">id. The Davis court concluded that the caller was "seeking aid, not telling a story about the past." See ids="3275498" index="21" url="https://cite.case.law/us/547/813/#p822">id. at 831, 126 S.Ct. at 2279. With these considerations in mind, we now examine the statements contained in the 911 tape.
Here, the record reflects that the 911 call was made at approximately 12:30 a.m. and lasted less than four minutes. During the call, Jones's voice is shaking and she is heard breathing heavily. When the operator asks Jones the location of her emergency, Jones provides the name and address of the apartment complex, and states "apartment 2201." When asked what she is reporting, Jones answers "[m]y husband attacked me." The operator then asks whether her husband is still in the apartment, and Jones answers that he went to his friend's apartment (number 2201) in the apartment complex. When the operator asks Jones where she is, Jones answers that she is standing outside of her apartment because of bad reception.[2] The operator asks Jones whether she needs an ambulance, and Jones replies "no." The operator then asks Jones for appellant's name and a description of him. When the operator asks Jones what appellant did, she replies that he took her documents (marriage license and birth certificate), and that when she tried to take the papers from him he punched her in the face. The operator asks Jones whether there are any weapons at either apartment but Jones does not answer yes or no. The operator then tells Jones that the officer will meet her and confirms that she will be inside her apartment (number 3106). Jones then *506 states, "I don't want him to try to flee," to which the operator responds that Jones cannot physically stop him. The operator tells Jones that an officer will be dispatched to her apartment and the call then concludes.
With regard to the first Davis factor, appellant argues that Jones's statements were testimonial because appellant was no longer in the apartment at the time Jones made the 911 call. Although it is true that Jones was not describing events as they were actually happening, courts applying Davis have held statements to be nontestimonial even though they were not describing events in progress. See, e.g. , Santacruz v. State , 237 S.W.3d 822, 828 (Tex. App.-Houston [14th Dist.] 2007, pet. ref'd) (concluding that domestic abuse victim's statements to 911 operator were nontestimonial even though they described events that had occurred ten to fifteen minutes earlier); Martinez v. State , 236 S.W.3d 361, 374-75 (Tex. App.-Fort Worth 2007, no pet.) (holding that statements made by appellant's son were nontestimonial under Davis , even though they described past events in which appellant gave son bag to hide in his pants); Garcia v. State , 212 S.W.3d 877, 883-84 (Tex. App.-Austin 2006, no pet.) (holding that statements made by wife were nontestimonial under Davis , even though they described past events in which her husband had forcibly abducted his child in violation of court order); Delacueva v. State , No. 14-05-01115-CR, 2006 WL 3589482, at *3 (Tex. App.-Houston [14th Dist.] Dec. 12, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that statements made by defendant's girlfriend were nontestimonial under Davis , even though they described past events in which boyfriend had "beat up" girlfriend). The events in this call, while in the past, were in the immediate past, and Jones's statements describing them were necessary for the police to form an idea of the type of emergency with which they were dealing.
As to the second factor, appellant argues that there was no ongoing emergency at the time Jones made the 911 call because appellant had already left the apartment and gone to a friend's apartment. Although it is true that appellant was no longer in the apartment at the time of the 911 call, he was in a nearby apartment in the same apartment complex. See Santacruz , 237 S.W.3d at 829 (concluding that any reasonable listener would recognize that domestic abuse victim was facing ongoing emergency even though she left her house to seek refuge in her mother's house). Appellant also points to the fact that when the operator asked Jones the location of the emergency, she initially told the operator apartment 2201 (the apartment to which appellant fled) rather than apartment number 3106 (her apartment). Thus, he argues, this fact demonstrates that there was no continuing threat to Jones at the time she made the call.[3] However, Jones's response to the operator does not mean that there was no ongoing emergency. She may have understood the operator to be asking where police could find appellant. Her response could also have been caused by the distress she was experiencing. In that regard, a review of the tape recording reflects that Jones's voice was shaking and she was breathing *507 heavily during the 911 call. Deputy Maly also testified that, when he arrived at the apartment shortly after the call, Jones was "very shaken, unsteady" and "traumatized," and that she was out of breath, her voice was quivering, and she appeared to have been crying. See ids="8367674" index="28" url="https://cite.case.law/sw3d/237/822/#p828">id. (noting officer's testimony, among other evidence, that victim was extremely upset, crying, and shaking when officer arrived at her mother's house, in reaching conclusion that any reasonable listener would believe victim was facing ongoing emergency). Given that appellant was still in the immediate vicinity of Jones's apartment and that Jones was upset when she spoke to the 911 operator, a reasonable listener would recognize that Jones was facing an ongoing emergency.
With regard to the third Davis factor, we find that the nature of what was asked and answered, when viewed objectively, was such that the elicited statements were necessary to effectively address the present emergency, rather than simply to learn what had happened in the past. After Jones asked for police, the 911 operator obtained essential basic information regarding Jones's identity and location. The operator then asked what she was reporting, and Jones responded "my husband attacked me." When asked what happened, Jones answered that appellant had taken her documents and that when she tried to take the papers from him he punched her in the face. The operator asked Jones for some identifying information for appellant and appellant's location. The operator then asked whether there were any weapons at either apartment and if Jones needed medical attention. Jones's statements were made in the course of a call initiated by the victim of a crime, and were neither official and formal in nature nor "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." Crawford , 541 U.S. at 51, 124 S.Ct. at 1364. The operator's questions and Jones's answers were necessary to resolve the responding officers' need to know "whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim." Davis , 547 U.S. at 832, 126 S.Ct. at 2279 ; see also Dixon v. State , 244 S.W.3d 472, 484-85 (Tex.App.-Hous. [14 Dist.] 2007) (noting primary purpose of 911 operator's questions and domestic abuse victim's responses was to determine if victim was physically injured and in need of medical assistance, and to assess potential for continuing threat to victim's safety or safety of responding officer).
As to the fourth factor, the tape shows that Jones was upset, her voice was shaking, and she was breathing heavily. See Davis , 547 U.S. at 827, 126 S.Ct. at 2277 (finding 911 caller's "frantic answers" indicative of nontestimonial statements); Dixon , 244 S.W.3d at 484 (finding fact that victim was highly distressed during call to 911 operator "compelling"); Santacruz , 237 S.W.3d at 830 (concluding tape showing that victim was distraught and frantically answering 911 operator's questions weighed in fact of finding statements nontestimonial). This fact indicates that Jones's statements to the 911 operator are nontestimonial.
We conclude that Jones out-of-court statements on the 911 tape, when viewed objectively, were made under circumstances indicating that the primary purpose of the interrogation was to enable the police to meet an ongoing emergency, rather than to establish or prove past events potentially relevant to later criminal prosecution. See Davis , 547 U.S. at 822, 126 S.Ct. at 2273-74. Because Jones's statements are not testimonial, the trial court did not err in admitting them. We overrule appellant's first issue.
B. Designation of Offense *508 In his second point of error, appellant contends that the judgment should be reformed to reflect that he was convicted of "assault" and not "assault-family member."[4]
Appellant was charged under section 22.01 of the Texas Penal Code. There is no offense under Chapter 22 entitled "assault-family member" or "assault-family violence." These are descriptions, not separate types of assault. Penal Code section 22.01, "Assault," establishes one crime, assault, which is a class A misdemeanor. See TEX. PENAL CODE ANN . § 22.01(b) (West Supp. 2016). However, section 22.01 sets up a number of circumstances under which the punishment for the crime, assault, can be enhanced to a third-degree felony. This is accomplished when the crime, assault, is committed against one of an enumerated class of people to whom the legislature has extended special protection. These include public servants, employees of a correctional facility, employees of drug treatment facilities, security officers, emergency service personnel in the performance of duty, and family members. See id. § 22.01(b)(1)-(5). Enhancement to a third-degree felony for assault on a family member is possible if "it is shown" that the defendant "has been previously convicted" of, among other things, assault on a family member under Chapter 22. See id. § 22.01(b)(2)(A).
Appellant's punishment is not subject to enhancement to a third-degree felony because he has not been previously convicted of assault on a family member. If he is again charged with assault on a family member, this conviction can be used to enhance his punishment. See Butler v. State , 189 S.W.3d 299, 302 (Tex. Crim. App. 2006). Appellant argues that the judgment in this case should be reformed to reflect a conviction for assault instead of what the judgment states, "assault-family member." However, appellant has cited no authority, and we have been unable to find any, that requires a judgment to use only the title of the offense identified in the Penal Code. Indeed, such authority as we have found is to the contrary.
In Miles v. State , 468 S.W.3d 719 (Tex. App.-Houston [14th Dist.] 2015), aff'd on other grounds , 506 S.W.3d 485 (Tex. Crim. App. 2016), the judgment recorded that the defendant had been convicted of sexual assault "of a child 14-17 years of age" and compelling prostitution "less than 18 years of age." On appeal, the defendant argued that the judgment should be reformed because the Penal Code only authorized convictions for "sexual assault" and "compelling prostitution." Id. at 736-737. The court disagreed, holding that these phrases accurately described the offenses and that these statutes criminalize different types of conduct which have varying defenses and punishments. Id. at 737-738. The court specifically held that there was no authority for the proposition that a judgment had "to include only the title of the offense identified in the Penal Code." Id. at 738. Similar results and reasoning are found in several cases which, while without precedential value, are instructive. See e.g., Rodriguez v. State , No. 14-15-00339-CR, 2016 WL 4922608, at *5 (Tex. App.-Houston [14th Dist.] Sept. 15, 2016, no pet.) (mem. op., not designated for publication) (declining to reform judgment for "assault-family member" to "assault" because *509 defendant failed to provide any reason compelling such reformation); Ayles v. State , No. 01-10-00049-CR, 2011 WL 941259, at *1 (Tex. App.-Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op., not designated for publication) (holding that trial court did not err by entering judgment for "Aggravated Sexual Assault of a Child Under 14" rather than "Aggravated Sexual Assault"); Torres v. State , No. 01-09-00936-CR, 2011 WL 148055, at *2 (Tex. App.-Houston [1st Dist.] Jan. 13, 2011, no pet.) (mem. op., not designated for publication) (concluding trial court did not err by entering judgment for "burglary of a habitation with intent to commit theft" rather than "burglary"). The thread that runs through these cases is based on the concept that so long as the judgment includes "an accurate description of the offense" then pedagogical precision is not required. See Davis v. State , 501 S.W.2d 629, 633 (Tex. Crim. App. 1973). Under this standard, the offense described in the judgment in the case before us is not incorrect and is, therefore, no error.
Othman v. State , while without precedential value, is also instructive. See No. 14-09-00444-CR, 2010 WL 2853888 (Tex. App.-Houston [14th Dist.] July 22, 2010, no pet.) (mem. op., not designated for publication). The judgment, which arose out of a guilty plea, reflected that the defendant had been convicted of "Aggravated Assault-Family Member" but the judgment did not include an affirmative finding of family violence. Id. at *1. Unlike the case before us, the State agreed that the judgment should be reformed to reflect a conviction for aggravated assault and the parties also agreed that an affirmative finding of family violence should be incorporated in the judgment. See id. The court approved of the parties' proposals because the "improper nomenclature" of "aggravated assault-family member" is no substitute for an affirmative finding that the charged offense involved family violence as is required by Texas Code Criminal Procedure article 42.013 and "a separate, specific affirmative finding must be entered in addition to the recitation of the offense for which a defendant has been convicted." Id. Since the State agreed to reform the language of the judgment, the case stands more for the proposition that the judgment must contain a separate affirmative finding of family violence to satisfy the requirements of article 42.013 than it does for any requirement that the judgment recite only the exact language of the statute charging the offense. Such a finding is included in the judgment in the case before us. We overrule appellant's second issue.
C. Constitutionality of Code of Criminal Procedure Article 102.008(a)
In his third point of error, appellant contends that the $25 court cost assessed as a "district attorney" fee in the bill of cost is unconstitutional because the court cost is not expended for criminal justice purposes and, therefore, renders the court a tax gatherer in violation of the separation of powers.
Article II, section 1, of the Texas Constitution provides:
The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.
TEX. CONST . art. II, § 1.
One way the separation of powers provision is violated is "when one *510 branch of government assumes or is delegated a power 'more properly attached' to another branch." Ex parte Lo , 424 S.W.3d 10, 28 (Tex. Crim. App. 2013). The courts are delegated a power more properly attached to the executive branch if a statute turns the courts into "tax gatherers," but the collection of fees in criminal cases is a part of the judicial function "if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes." Peraza v. State , 467 S.W.3d 508, 517 (Tex. Crim. App. 2015).
Article 102.008(a) of the Code of Criminal Procedure provides, with an exception not applicable here, that "a defendant convicted of a misdemeanor ... shall pay a fee of $25 for the trying of the case by the district or county attorney." TEX. CRIM. PROC. CODE ANN . art. 102.008 (West 2015). The statute does not state where the $25 fee is to be directed. The Office of Court Administration's website reflects that 100% of the money collected for the "prosecutor's fee" remains "with the County (or the City) and is directed to the County's (or City's) General Fund."[5] Money in a county's general fund can be spent for "any proper county purpose." See Tex. Att'y Gen. Op. No. JM-530 (1986) (concluding money returned to county's general fund may be spent "for any proper county purpose").
In its recent decision in Salinas v. State , the Court of Criminal Appeals declared Local Government Code section 133.102 facially unconstitutional in violation of the separation of powers clause of the Texas Constitution to the extent it allocated funds to the "abused children's counseling" account because the funds were not directed by statute to be used for a criminal justice purpose and, instead, went to the State's general revenue fund. See Salinas v. State , 523 S.W.3d 103, 109 n.26 (Tex. Crim. App. 2017).[6] The Court concluded:
"We cannot uphold the constitutionality of funding this account through court costs ... when all the funds in the account go to general revenue. Consequently, the allocation of funds to the "abused children's counseling" account does not currently qualify as an allocation of funds "to be expended for legitimate criminal justice purposes." To the extent that § 133.102 allocates funds to the "abused children's counseling" account, it is facially unconstitutional in violation of the Separation of Powers provision of the Texas Constitution.
Id. at 109-10.
The State argues that the prosecutor's fee assessed in this case is constitutional because it can be spent on a legitimate criminal justice purpose. This argument is unavailing. The Salinas court emphasized that the issue of whether a fee is a court cost (which is allowed) or a tax (which is unconstitutional) "must be determined at the time the fee is collected , not at the time the money is spent." See id. at 109, n.26 (emphasis in original). The Court noted:
Because the constitutional infirmity in this case is the statute's failure to direct the funds to be used in a manner that *511 would make it a court cost (i.e., for something that is a criminal justice purpose), the statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face. The fact that some of the money collected may ultimately be spent on something that would be a legitimate criminal justice purpose if the legislature had directed its use in that fashion is not sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost.
Id.
Article 102.008(a) does not direct that the $25 prosecutor's fee be expended for criminal justice purposes. Consistent with Salinas , we hold that article 102.008(a) is unconstitutional to the extent it allocates funds to the county's general fund because those funds allow spending for purposes other than legitimate criminal justice purposes in violation of the separation of powers provision of the Texas Constitution. Accordingly, we sustain appellant's third point of error.
Conclusion
We modify the trial court's judgment to delete the $25 "district attorney" fee from the bill of cost. We affirm the judgment, as modified.

We presume, without deciding, that the acts of 911 operators may be considered to be acts of the police. See Davis v. Washington , 547 U.S. 813, 823, 126 S.Ct. 2266, 2274 n.2, 165 L.Ed.2d 224 (2006).

The record reflects that Jones's first call to 911 was disconnected and that she called back a second time.

Appellant also suggests that Jones's statements are testimonial because "[s]he seemed more concerned that [appellant] would elude police authorities than that he would return and do her harm." Even assuming that this was Jones's subjective motivation in calling 911, the relevant inquiry is the purpose that reasonable participants would have had rather than the subjective or actual purpose of the particular parties. See Michigan v. Bryant , 562 U.S. 344, 360, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (2011).

An appellate court may reform a trial court's judgment to allow the record to "speak the truth" when that court has the "necessary date and information to do so, or make any appropriate order as the law and nature of the case may require." French v. State , 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) ; Nolan v. State , 39 S.W.3d 697, 698 (Tex. App.-Houston [1st Dist.] 2001, no pet.).

See Office of Court Administration, Study of the Necessity of Certain Court Costs and Fees in Texas (Sept. 1, 2014), at 6-7 in Criminal Court Cost Section (Fee No. 13, "Prosecutor's Fee"), http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf.

The court also declared section 133.102 unconstitutional to the extent it allocated funds to the "comprehensive rehabilitation" account because the uses to which the money was directed did not relate to the criminal justice system. See Salinas v. State , 523 S.W.3d 103, 108-10 (Tex. Crim. App. 2017).