# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00359-CR

---

**John Howard Mason, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 450TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-16-302452, THE HONORABLE BRAD URRUTIA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant John Howard Mason of the offense of assault family violence—strangulation, with a prior conviction for assault family violence. *See* Tex. Penal Code § 22.01(b-1).[1] The district court rendered judgment on the verdict and assessed punishment, enhanced by two additional prior convictions for assault family violence, at 25 years' imprisonment. In three points of error on appeal, Mason asserts that the district court abused its discretion in admitting evidence of: (1) a reference to an extraneous offense contained within an EMS report of the victim's injuries; (2) statements made by the victim to the investigating officer; and (3) a recording of a 911 call made by a bystander. We will affirm the district court's judgment.

---

[1] In 2017, the Legislature re-designated this provision as § 22.01(b-2). *See* Act of May 4, 2017, 85th Leg., R.S., ch. 34, § 27, 2017 Tex. Gen. Laws 72, 81–82. For convenience, we cite to the version of the statute in effect at the time the offense was committed.

**BACKGROUND**

The jury heard evidence that on December 17, 2016, Trenisha Sterling, the victim in the case, got into an argument with Mason, her boyfriend, in the parking lot of a bar in Manor. The argument escalated and Mason punched Sterling in the face and knocked her to the ground. Sterling got into her car and drove to her apartment in Austin. Shortly thereafter, Mason arrived at the apartment, where another argument began. At this time, Mason punched Sterling in the face, threw her down on her bed, got on top of her, and began to strangle her. At some point, Mason stopped and left the apartment. Both Sterling and a bystander called 911. Police and EMS responded to the scene and interviewed Sterling, who had injuries that were consistent with strangulation. EMS advised Sterling to go to a hospital for treatment, but she refused, telling EMS that she was the primary caregiver for her disabled daughter and that she could not leave her daughter alone in the apartment.

**STANDARD OF REVIEW**

"An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Id*. "Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). "An evidentiary ruling will be upheld if it was correct on any theory of law applicable to the case." *Id*. at 93.

ANALYSIS

**EMS report**

Prior to trial, Mason filed a motion in limine, seeking to prevent the State from introducing evidence related to any extraneous offenses that Mason might have committed. *See* Tex. R. Evid. 404(b) (providing that extraneous-offense evidence is generally inadmissible). At a pretrial hearing on the motion, the district court instructed the State to redact from its evidence any references to the extraneous offense of injury to a disabled person. The extraneous offense involved Sterling's daughter, who was allegedly struck by Mason during the incident with Sterling. At trial, the State offered into evidence an EMS report of the incident, which included the following reference to Sterling's daughter: "[Patient] refused transport [to hospital,] stating she could not leave her disabled daughter at home." The district court admitted the report into evidence. In his first point of error, Mason asserts that the statement referenced an extraneous offense, thereby violating the motion in limine and denying him a fair trial.

As an initial matter, the State asserts that Mason failed to preserve error on this point because "motions in limine do not preserve error." *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). "A motion in limine is not a ruling that excludes evidence; rather, it merely requires the parties to approach the trial court for a definitive ruling before attempting to put on evidence within the scope of the motion in limine order." *Thierry v. State*, 288 S.W.3d 80, 86–87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

However, in this case, the record reflects that Mason objected to the statement during trial and at the time the EMS report was offered into evidence. We note that the basis of his objection was unclear and does not appear to comport with Mason's complaint on appeal.[2]

---

[2] The record reflects that Mason objected to the statement as follows:

*See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (to preserve error, point of error on appeal must comport with objection made at trial). But, assuming without deciding that Mason's objection at trial was sufficient to preserve error, we cannot conclude that the district court abused its discretion in admitting the evidence. The statement indicated merely that Sterling's disabled daughter was at home in the apartment and that Sterling refused to go to the hospital because she did not want to leave her daughter alone. The statement did not mention anything that Mason did to Sterling's daughter. Thus, it would not have been outside the zone of reasonable disagreement for the district court to have concluded that the statement did not refer to an extraneous offense and thus did not need to be redacted from the report.

We overrule Mason's first point of error.

**Statements to investigating officer**

Sterling, the victim in the case, did not testify at trial. Consequently, the State relied on other witnesses to provide testimony describing the events that occurred during the assault. One of those witnesses was Officer Jeremy Bolin of the Austin Police Department, who spoke with Sterling upon his arrival at her apartment. Sterling described the assault to Bolin, and

---

| [Defense counsel]: | Judge, there is a reference in here to the patient's disabled daughter. I think that should be redacted. That's the victim in the other case. |
|---|---|
| [District court]: | Okay. So your objection is to the reference to the disabled daughter on what basis? |
| [Defense counsel]: | It doesn't really necessary [sic] for—I mean, the whole point of introducing this is that the statement was taken. What gets around it hearsay is that it was taken for the purpose of a medical evaluation. That information isn't necessary. |

The district court overruled the objection.

4

Bolin testified as to what Sterling told him. In his second point of error, Mason asserts that this testimony was inadmissible hearsay and violated his right of confrontation.[3]

*Hearsay*

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule. *See* Tex. R. Evid. 802. Here, it is undisputed that the statements Sterling made to Officer Bolin were hearsay. However, the State contends that they were admissible under the "excited utterance" exception to the hearsay rule.

An "excited utterance" is defined as "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2). "The basis for the excited utterance exception is 'a psychological one, namely, the fact that when a [person] is in the instant grip of violent emotion, excitement or pain, [she] ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the "truth will come out.""" *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). "The critical determination is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Id*. at 596 (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)); *see also Coble v. State*, 330 S.W.3d 253, 294

---

[3] The State asserts that Mason did not preserve error on this point. However, the record reflects that Mason raised these specific objections in a pretrial hearing and again during Bolin's testimony at trial. The record also reflects that the district court overruled Mason's objections. Accordingly, we conclude that Mason preserved error. *See* Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a) (describing requirements for error preservation in evidentiary rulings).

(Tex. Crim. App. 2010) ("The critical question, however, is not the specific type of emotion that the declarant is dominated by—anger, fear, happiness—but whether the declarant was still dominated by the emotion caused by the startling event when she spoke."); *McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008) (observing that "excited utterance" need not be contemporaneous with startling event and that statement can relate to "a much earlier incident").

In a pretrial hearing on the admissibility of Officer Bolin's testimony, Bolin testified that when he arrived at the apartment, he "started getting flagged down" by Sterling, who was "kind of out in front of the building hysterical, crying, kind of waving me down." Sterling added that when he made contact with her, he "just kind of tried to calm her down a little bit" and that as she was describing the assault to him, "she was still pretty hysterical, kind of crying, upset. She had some injuries that I could see immediately on her face and neck." Bolin estimated that Sterling described the assault to him "within the first 10 minutes" of his arrival at the scene.

During trial, shortly before Mason renewed his objection, Bolin also testified that when he arrived at the apartment, Sterling "was trying pretty frantically to get [Bolin] to stop" his vehicle. Bolin further testified that as he spoke with Sterling, she was "still upset" and told him that "she had just been assaulted." Bolin agreed with the prosecutor's characterization of Sterling as "clearly still frantic" while she was describing the assault to him, and Bolin explained that he was "trying to slow things down" as he spoke with her. Bolin also observed that Sterling appeared injured. He explained, "She had a lot of scratches and red marks all over her face. Same thing with her neck, a lot of redness. Looked like somebody had scratched her neck. And she had a cut on her bottom lip."

6

In sum, the evidence tended to show that Sterling was "frantically" trying to get Bolin's attention when he arrived at her apartment, that she appeared to be injured from a recent assault, and that as she described that assault to Bolin, Sterling was "hysterical," "crying," "upset," and remained "frantic." Also, Bolin testified that within the first ten minutes of his arrival, Sterling described the assault to him as he attempted to "calm her down" and "slow down" the conversation. Based on this evidence, it would not have been outside the zone of reasonable disagreement for the district court to have found that at the time Sterling described the assault to Bolin, she was "still dominated by the emotions, excitement, fear, or pain" of the assault. Accordingly, the district court did not abuse its discretion in admitting the evidence under the "excited utterance" exception to the hearsay rule. *See Zuliani*, 97 S.W.3d at 596; *Reyes v. State*, 48 S.W.3d 917, 920 (Tex. App.—Fort Worth 2001, no pet.).

### Confrontation Clause

Evidence that is admissible under an exception to the hearsay rule may still be inadmissible under the Confrontation Clause. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). The Confrontation Clause prohibits the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [] a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Conversely, the Confrontation Clause does not prohibit the admission of "nontestimonial" statements. *Id*. Therefore, the admissibility of statements under the Confrontation Clause hinges on whether the statements are testimonial or nontestimonial. *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008).

7

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. Whether a particular out-of-court statement is testimonial or not is a legal question. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). "Although we defer to the trial court's resolution of credibility issues and historical fact, we review de novo the ultimate constitutional question of whether the facts as determined by the trial court establish that an out-of-court statement is testimonial." *Id*. (citing *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006)).

Here, Officer Bolin testified that he was responding to a "disturbance hotshot," which "means that whatever is taking place is currently going on, and that the victim and the suspect are still on scene, and it's actually happening right now." He added that a hotshot call receives higher priority than other calls because "some sort of active violence is going on right at this moment" and "two officers at least are going to drop what they're doing right at that moment. They're going to turn their lights and siren on and go straight to the call." On his way to the scene, Bolin learned from dispatch that the "suspect was currently leaving" the apartment, so Bolin was "kind of trying to look out for him." Bolin explained that the call was still considered an emergency because "it's a disturbance. So there's possibly an act of violence and the suspect is still at least in the area. So there's still a possibility for a continuation of violence."

When Bolin arrived at the scene and encountered Sterling, she was "upset," "frantic," and "hysterical," and Bolin immediately began speaking with her. Bolin testified that

8

"there was a lot going on" at the scene, with multiple bystanders present, and he was "just trying to get the story as quickly as possible, just trying to understand all the moving parts, if there are still suspects on scene, kind of what kind of crime we could possibly be dealing with and how I need to proceed from there." When asked to explain why it was "important to start gathering information as soon as possible," Bolin testified as follows:

> So the most important thing is we're trying to figure out is there still an element of danger, is there still a possibility that violence could take place, is somebody still in the area, you know, is our victim still susceptible to violence. And then we're trying to figure out what crime exactly are we dealing with, because that will kind of determine where we go from there.

Bolin added that he was also trying to determine "what injuries [Sterling] has." He concluded, "I'm trying to figure out what exact crime we have, were there weapons involved, and what sort of medical attention [Sterling] might need."

In sum, the evidence tended to show that Bolin was responding to a high-priority emergency call involving "active violence," the suspected assailant had left the scene but was possibly still in the area, and the victim, who was frantic and upset, appeared injured and in need of medical assistance. Moreover, Bolin testified that when speaking with Sterling, he was "trying to understand all the moving parts" at the scene, determine if weapons had been involved and whether there was an ongoing threat of violence, and ascertain the extent of Sterling's injuries so that he could determine if she needed medical attention. We conclude that these circumstances objectively indicate that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency. *See Davis*, 547 U.S. at 827; *Hernandez v. State*, 562 S.W.3d 500, 505–07 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Garcia v. State*, 212 S.W.3d 877, 883–84 (Tex. App.—Austin 2006, no pet.). Accordingly, the district court did

9

not err in concluding that the statements were nontestimonial and thus admissible under the Confrontation Clause.

We overrule Mason's second point of error.

**911 call**

Over Mason's objection, the district court admitted into evidence a recording of a 911 call made by a bystander. Mason objected to the entire recording "on hearsay and confrontation" grounds. In his third point of error, Mason asserts that the recording should not have been admitted. Specifically, he contends that the recording was "improperly admitted because it is describing past events at least halfway through the tape," in violation of hearsay rules and the Confrontation Clause.

The State argues that Mason failed to preserve error on this point. We agree. It is well established that when an exhibit contains both admissible and inadmissible evidence, the objection must refer specifically to the challenged material to apprise the trial court of the exact objection. *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995); *Human v. State*, 749 S.W.2d 832, 838 (Tex. Crim. App. 1988); *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985); *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g). A trial court is not obligated to search through an exhibit and identify what is and is not admissible; that burden is on the party challenging the admissibility of the evidence. *See Whitaker*, 286 S.W.3d at 369.

Here, the recording, which is approximately eight minutes long, contained numerous statements by both the caller and the 911 responder, at least some of which were admissible. For example, early in the recording, the caller can be heard requesting police

assistance in response to an assault that was either in progress or had just occurred. This and other statements describing the assault would be admissible under the present-sense-impression exception to the hearsay rule, *see* Tex. R. Evid. 803(1), and as a nontestimonial statement under the Confrontation Clause, *see Davis*, 547 U.S. at 827 (characterizing 911 call as nontestimonial when caller described ongoing assault). Although there might be some statements on the call that may have been inadmissible, Mason failed to identify any such statements when he objected to the exhibit.[4] Instead, he objected to the exhibit in its entirety "on hearsay and confrontation" grounds. Thus, "[w]hile it might be conceded that appellant's objection sufficiently stated grounds for the objection, it did not identify what was objected to." *Hernandez*, 599 S.W.2d at 617. Accordingly, we conclude that Mason failed to preserve error, if any, in the admissibility of statements contained within the recording. *See Whitaker*, 286 S.W.3d at 369; *Sonnier*, 913 S.W.2d at 511; *Reyes v. State*, 314 S.W.3d 74, 78 (Tex. App.—San Antonio 2010, no pet.).

We overrule Mason's third point of error.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: August 29, 2019

Do Not Publish

_____

[4] On appeal, Mason refers to one statement made by the caller—"He is walking away"—but otherwise fails to specify the statements that he contends the district court should have excluded.