**Opinion issued December 12, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00859-CR

_____

**JORDAN LEE ARNETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. MD-0376274**

---

### MEMORANDUM OPINION

A jury convicted Jordan Lee Arnett for the misdemeanor offense of assault involving family violence. *See* TEX. PENAL CODE § 22.01(a)(1). The jury sentenced Arnett to confinement in jail for one year, suspended his sentence, placed him on community supervision for two years, and assessed a $4,000 fine. *See id.* § 12.21.

On appeal, Arnett contends that the trial court erred by denying a mid-trial limiting instruction on extraneous offenses. Arnett also contends that Section 46.04(b) of the Texas Penal Code violates the Second Amendment to the United States Constitution because the finding of family violence immediately invokes the prohibition against possessing a firearm in Section 46.04(b). We affirm.

## Background

In 2014, Arnett began dating L. Huston. They moved in together and had a daughter. Eventually, Huston ended the relationship, moved out of their home, and bought her own home. One morning while at her new home, Huston texted Arnett and asked him to pick up their daughter from school. Arnett replied, "If we are doing each other favors, then leave my spare garage door remote by the front door." Huston agreed to return the garage door remote to Arnett and placed it outside her front door.

Arnett arrived at Huston's home and "pounded on the door." Through the window, Huston pointed at the bottom of the front door and told Arnett that he could retrieve the remote from there. Huston slightly opened the door when Arnett had trouble locating the remote. Arnett shoved open the door, which hit Huston in the face and caused her to fall on the ground. An argument ensued. Arnett took artwork from the wall and threw it into the wall, leaving a hole in the wall.

When Huston ran across the house to grab her cell phone to call 911, Arnett asked her, "Who are you texting?" Arnett then grabbed Huston's cell phone and repeatedly "slammed" it on the ground. After damaging Huston's cell phone, Arnett asked, "Where are the rings?" According to Huston, Arnett had given her an engagement ring when he proposed marriage and a heart-shaped ring on another occasion. Huston told Arnett that she did not know where she placed the rings because of the recent move into her home. Arnett screamed at her.

Huston ran out of the front door. At that time, Huston saw a neighbor she had never met before and asked him to call 911. The neighbor ran back into his house to call 911, and Arnett violently dragged Huston back into her house. After Arnett closed the door, he asked Huston where her gun was located. She told him where he could find it. At that point, Arnett said, " Go get your gun, and I'll help you kill yourself." Arnett put his finger to his own head and stated, "I'll help you pull the trigger." Arnett then hit Huston on the left side of her face. Huston pleaded for Arnett to stop hitting her. Arnett hit her again and then left the house. Arnett's blows left Huston with several injuries.

The police arrived shortly after Arnett left. Huston provided officers with a written statement about the incident. Huston also went to the police station and requested a protection order. Later, officers arrested Arnett and charged him with assault on a family member.

At trial, Arnett objected to the admission of five photos of Huston's damaged cell phone that were taken on the day of the altercation. Arnett also asked the trial court to admonish the jury as to the "limitations considering an extraneous offense." The trial court overruled Arnett's objection. Later, when Sergeant Leland began testifying about the condition of Huston's cell phone, Arnett renewed his objection. Outside the presence of the jury, the trial court asked Arnett to explain his objection. Arnett explained that his objection to the admission of the photos was based on the damage to the cell phone being an unadjudicated charge of criminal mischief. He stated:

> The testimony is going to be that that's her cell phone, and I think it's all been referenced at one point to him damaging the cell phone. And that's State's Exhibits 10 through 14. And I would object that under 403 balancing, although it has some relevance because it's what was going on inside, it's more prejudicial than it is probative. It basically risks putting the Defendant on trial for the criminal mischief, and that's also the reason asking for an admonishment, if we get into this further, that they should limit their consideration of the extraneous offense to only if they believe beyond a reasonable doubt and for the limited purposes. And I think it's the State's prerogative to suggest what legitimate purposes it may be in order for you to tell the jury, but they still have to do that. And I am entitled to have an instruction not just in the written instructions at the end, but also at the time the extraneous evidence is presented.

The trial court asked whether the cell-phone evidence was from the altercation between Huston and Arnett. The State responded, "This is purely evidence of the scene where we are alleging all occurred." The State acknowledged that it declined to pursue a related charge against Arnett for "an interference with [a] 911 call."

4

And the State confirmed that it did not charge Arnett with criminal mischief. The trial court overruled Arnett's objection. Arnett does not challenge that ruling. His challenge is limited to the trial court's failure to instruct the jury that the photo evidence may be considered only for a limited purpose.

After the close of evidence, the jury convicted Arnett of assault involving family violence. The jury sentenced Arnett to confinement in jail for one year, suspended his sentence, placed him on community supervision for two years, and assessed a $4,000 fine. The trial court made an affirmative finding of family violence. *See* TEX. CODE CRIM. PROC. art. 42.013. Arnett does not challenge that finding either. When the trial court provided Arnett with a notice prohibiting him from possessing or transferring firearms or ammunition, Arnett then moved to hold Texas Penal Code 46.04(b) to be a violation of the Second Amendment to the United States Constitution. The trial court denied his motion. This appeal followed.

## Limiting Instruction

In his first issue, Arnett contends that he was entitled to a mid-trial limiting instruction on extraneous-offense evidence consisting of testimony and pictures of Huston's damaged cell phone. The State counters that the evidence was properly admitted as same-transaction contextual evidence and thus no limiting instruction was necessary.

A criminal defendant is "entitled to be tried on the accusations made in the State's pleading and he should not be tried for some collateral crime or for being a criminal generally." *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987) (en banc). Evidence of an uncharged offense, however, may be admissible to show the context in which the criminal act occurred. *Id*. at 659–60; *Ex parte Lane*, 303 S.W.3d 702, 710 (Tex. Crim. App. 2009). In addition, Rule 404(b) provides that evidence of other crimes, wrongs, or acts may be admissible for other legitimate purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. TEX. R. EVID. 404(b). Evidence of extraneous offenses may also be admitted where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). When evidence of extraneous offenses is admitted as same-transaction contextual evidence, the trial court need not provide the jury with a limiting instruction. *Id*. at 471.

Arnett does not challenge the trial court's ruling on the admissibility of the photographs and testimony of Huston's damaged cell phone as same-transaction contextual evidence. Rather, he challenges the trial court's failure to give a mid-trial limiting instruction. But Texas courts have held that a limiting instruction is

not required when evidence is admitted as same-transaction contextual evidence. *Castaldo v. State*, 78 S.W.3d 345, 352 (Tex. Crim. App. 2002) (per curiam); *Wesbrook v. State*, 29 S.W.3d 103, 114–15 (Tex. Crim. App. 2000) (en banc). Because Arnett had no right to a limiting instruction following the unchallenged ruling on the admissibility of the cell-phone-damage evidence as same-transaction contextual evidence, we overrule Arnett's first issue.

**Constitutional Challenge**

Section 46.04(b) criminalizes the unlawful possession of a firearm. *See* TEX. PENAL CODE § 46.04(b). Arnett contends that Section 46.04(b) of the Texas Penal Code violates the Second Amendment to the United States Constitution. The basis of Arnett's facial constitutional challenge is that the finding of family violence immediately threatens his right to bear arms. In response, the State argues that Arnett lacks standing to challenge the constitutionality of Section 46.06(b).

**A.     Standard of review**

A facial challenge is an attack on the statute itself as opposed to a particular application. *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017). Whether a criminal statute is constitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A person challenging the constitutionality of a statute has the burden of establishing its unconstitutionality. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015).

7

"Statutes are presumed to be constitutional until it is determined otherwise." *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *see Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978) (en banc) (requiring the appellate court to "commence with the presumption that such statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting the statute.").

To establish that a statute is facially unconstitutional the appellant must show that "no set of circumstances exists under which that statute would be valid." *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). We should consider "the statute only as it is written, rather than how it [may operate] in practice" *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011). "If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity." *Kfouri v. State*, 312 S.W.3d 89, 92 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We uphold the statute if we can apply a reasonable construction rendering the statute constitutional. *Id*. (citing *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979)).

## B.    Constitutionality of Section 46.04(b)

A person convicted of assault-family violence faces the consequences enunciated in Section 46.04(b) of the Texas Penal Code. *See Moliere v. State*, 574

8

S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *Hernandez v. State*, 562 S.W.3d 500, 513–14 (Tex. App.—Houston [1st Dist.] 2004, no. pet.) (Keyes, J., concurring in part and dissenting in part). A finding of family violence makes it unlawful for a person against whom the finding was made to possess or transfer firearms or ammunition.

Before we can decide whether this statute is constitutional, we must first resolve whether Arnett has standing to challenge the constitutionality of the statute. *See Meshell v. State*, 739 S.W.2d 246, 250 (Tex. Crim. App. 1987) (en banc); *Merritt v. State*, No. 01-02-00763-CR, 2004 WL 350254, at *2 (Tex. App.—Houston [1st Dist.] Feb. 26, 2004, pet. ref'd) (mem. op., not designated for publication). Arnett has standing to challenge the constitutionality of Section 46.06(b) only if the statute adversely impacted his own rights. *DeBlanc v. State*, 799 S.W.2d 701, 706 n.5 (Tex. Crim. App. 1990) (en banc) (citing *County Court of Ulster County, N. Y. v. Allen*, 442 U.S. 140, 153 (1979)). Following his conviction and sentencing, the trial court ordered Arnett to "surrender . . . all guns and ammunition to the Galveston County Sheriff's Department . . . within 72 hours of release on the appeal bond" because he was not entitled to possess any weapons or ammunition as a result of the trial court's affirmative finding of family violence. The trial court prohibited Arnett from possessing firearms and ammunition as criminalized by Section 46.04(b). *See Hernandez*, 562 S.W.3d at 513–14. Because

Arnett's conviction for an assault on a family member adversely affects his Second Amendment rights under the United States Constitution, we conclude that Arnett has standing to challenge Section 46.04(b), even though he has not been charged or convicted under this section. A violation of a statute is not required to establish injury in fact for standing purposes so long as the threat of such is sufficiently imminent. *State v. Johnson*, 475 S.W.3d 860, 864 n.12 (Tex. Crim. App. 2015) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend II. Arnett relies on *District of Columbia v. Heller*, 554 U.S. 570 (2008). In *Heller*, the Supreme Court held that the Second Amendment secures an individual's right to keep a handgun at home for self-defense and struck down a law that prohibited a person from possessing a handgun in the home. *Id.* at 635. In *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010), the Supreme Court held that the Second Amendment applies to the states.

Even under *Heller*, the Second Amendment is not unlimited. *See* 554 U.S. at 626 ("Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any

10

weapon whatsoever in any manner whatsoever and for whatever purpose."). The Supreme Court noted that concealed-weapon restrictions did not violate the Second Amendment. *Id*. Likewise, the Fifth Circuit has recognized the limitation of Second Amendment rights. In *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001), the Fifth Circuit explained that the individual right it recognized does not preclude the government from prohibiting the possession of firearms by certain classes of people.

> [T]he Second Amendment does protect individual rights, that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country.

*Emerson* reasoned that "felons, infants and those of unsound mind may be prohibited from possessing firearms." *Id.*

Texas courts examining Second Amendment claims post-*Heller* have acknowledged that the government may limit firearm possession without running afoul of the Second Amendment. *See, e.g.*, *Webb v. Schlagal*, 530 S.W.3d 793, 810 (Tex. App.—Eastland 2017, pet. denied) (holding "that Articles 7A.03, 7A.05, and 7A.07 of Texas Code of Criminal Procedure, as applied to Webb, do not infringe on his Second Amendment right to bear arms and are not unconstitutional, as applied to him, under Section 23, Article 1 of the Texas Constitution"); *Wells v. Texas Dep't of Pub. Safety*, No. 14-17-00547-CV, 2019 WL 962214, at *2 (Tex.

11

App.—Houston [14th Dist.] Feb. 28, 2019, no pet.) (mem. op., not designated for publication) (holding revocation of handgun license following a DWI conviction does not violate the Second Amendment); *Wargocz v. Brewer*, No. 02-17-00178-CV, 2018 WL 4924755, at *9 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op., not designated for publication) (holding that protective-order statute prohibiting possession of a firearm, as applied in appellant's case, did not violate the Second Amendment); *Ross v. State*, No. 06-14-00157-CR, 2015 WL 4594130, at *6 (Tex. App.—Texarkana July 31, 2015, no pet.) (mem. op., not designated for publication) (determining that Section 46.04(a)(1) was not unconstitutional as applied to appellant).

Arnett argues that "[t]here is no rational basis for holding that the mere fact of a conviction in this [case] demonstrates a need to forbid Arnett from possessing a firearm." We disagree. Arnett's loss of his right to possess firearms or ammunition is a collateral consequence of his assault-family-violence conviction. *See Moliere*, 574 S.W.3d at 26 (describing "a restriction on weapons possession as a direct non-punitive consequence of certain crimes"). And, after the jury found Arnett guilty, the trial court made a finding of family violence, which automatically made it unlawful for him to possess or transfer firearms or ammunition. *See* TEX. CODE CRIM. PROC. art. 42.013. Courts have held that gun-possession statutes do not violate the Second Constitution in domestic violence

cases. For instance, Congress had a substantial and compelling government interest in decreasing domestic violence when it enacted 18 U.S.C. § 922(g)(8), which prohibits gun possession by individuals subject to domestic protective orders. *See Webb*, 530 S.W.3d at 809 (citing *United States v. Lippman*, 369 F.3d 1039, 1044 (8th Cir. 2004)). Similarly, in *United States v. Spruill*, 61 F. Supp. 2d 587, 591 (W.D. Tex. 1999), the court rejected the defendant's Second-Amendment challenge and held that "the Second Amendment does not prohibit the federal government from imposing some restrictions on private gun ownership." For these reasons, we hold that Arnett has failed to establish that the statute on its face operates in all possible circumstances to unconstitutionally infringe upon the rights guaranteed under the Second Amendment. *See generally Salinas v. State*, 464 S.W.3d 363, 367 (Tex. Crim. App. 2015).

## Conclusion

We affirm the judgment of the trial court.


Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).

13